IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01000-CMA-CBS

SALOMON JUAN MARCOS VILLARREAL,
        Petitioner,
v.

UNITED STATES,
        Respondent.

---

RECOMMENDATION REGARDING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on Respondent United States' Motion for

Summary Judgment with Respect to the Petition to Quash a Summons (doc. #13), filed on July

22, 2011.  Petitioner Salomon Juan Marcos Villarreal filed his Opposition to the United States'

Motion for Summary Judgment (doc. #16) on August 12, 2011, followed by the Respondent's

Reply to Petitioner's Opposition Memorandum (doc. #20) on August 18, 2011.  Petitioner

Villarreal brought the briefing process to an end on August 24, 2011 with the filing of his Sur-

Reply to the IRS' Reply to Petitioner's Opposition Memorandum (doc. #25).  This court heard

oral argument on the pending motion on October 11, 2011.

With an Order of Reference (doc. #4) dated April 18, 2011, this matter was referred to

the Magistrate Judge to hear and determine all non-dispositive pretrial matters, and to conduct

hearings and submit proposed findings of fact and recommendations for all dispositive motions,

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  The court has carefully reviewed the pending

1

motion, the related briefing and attached exhibits, the entire case file and the applicable law, and is sufficiently advised in the premises.  For the following reasons, this court recommends that Respondent's motion be granted.

## FACTUAL BACKGROUND

Salomon Juan Marcos Villarreal initiated these proceedings on April 14, 2011 with the filing of his Petition to Quash Summons or, in the alternative, For Additional Time to Prepare Evidence of Bad Faith (doc. #1).  In his Petition, Mr. Villarreal asserts that the Internal Revenue Service ("IRS") improperly issued a summons to American National Bank, a financial institution in Colorado Springs, Colorado, in furtherance of audits and investigations undertaken by the Servicio de Administracion Tributaria ("SAT"), the Mexican taxing authority.  According to Petitioner, the Agreement between the United States of America and the United Mexican States for the Exchange of Information with Respect to Taxes ("TIEA") precludes the IRS from honoring a request for assistance if the information sought would not be obtainable under the laws of Mexico.  Mr. Villarreal argues that the TIEA prevents the IRS from seeking information from American National Bank until legal proceedings in Mexico establish the legality of the Mexican tax authorities' audits and investigations.  Alternatively, Petitioner contends that the IRS summons violates the well-established standards established in *United States v. Powell*, 379 U.S. 48 (1964), to the extent the summons was not issued for a legitimate purpose and seeks documents that are not relevant to any such legitimate purpose.  Mr. Villarreal amplified these arguments with a Supplement to Petition to Quash Summons or, in the alternative, for Additional Time to Prepare Evidence of Bad Faith (doc. #11), filed on June 21, 2011.

Respondent United States filed the pending Motion for Summary Judgment (doc. #13) on

July 22, 2011.  In summary, Respondent argues this court is not the appropriate forum to resolve, or even address, the merits of Petitioner's dispute with the Servicio de Administracion Tributaria. Rather, the United States insists the factual record conclusively establishes that the IRS acted in good faith and in a manner consistent with its obligations under the TIEA when it issued a summons to American National Bank.

The basic facts underlying the instant action should not be in dispute.  However, the parties substantially disagree on the broader context within which those facts must be viewed and the interpretations that might be drawn from those attendant circumstances.  In addressing the instant motion, the court must distinguish between the factual record and the assumptions which color or provide the underpinnings of each side's arguments.

Declarations submitted in support of Respondent's motion describe the following events. On March 4, 2011, Jacqueline Vargas Arellanes, Central Administrator of International Examination for the SAT, acting as the Competent Authority for the Government of Mexico, requested the IRS' assistance in obtaining information from American National Bank concerning Mr. Villarreal.  *See* Declaration of Douglas W. O'Donnell, ¶¶ 2-5, 11, attached as Exhibit 2 (doc. #13-2) to Respondent's Motion for Summary Judgment.[1]  According to Mr. O'Donnell, the Director of Competent Authority and International Coordination within the Internal Revenue Service, Mexican authorities stated that the requested information would be used to examine Petitioner's Mexican tax liabilities for the period January 1, 2009 through December 31, 2009.

---

[1]"Factual assertions in the moving party's affidavits may be accepted as true [for purposes of a motion for summary judgment] unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary."  *Amuso v. U.S. Department of Justice*, 600 F. Supp. 2d 78, 87 (D.D.C. 2009).

*Id.* at ¶ 4.  In support of its request for assistance, the SAT indicated that Mr. Villarreal was associated with a Mexican entity, Bull Denim, S.A. de C.V. ("Bull Denim") and Rambas Marketing Company, LLC ("Rambas"), a United States company, and was believed to have used those entities to falsely obtain tax refunds and evade income and corporate tax obligations.[2]  *Id.* at ¶ 6.  Additional information provided in the March 4, 2011 request suggested that Mr. Villarreal was the General Director of Bull Denim, and that Bull Denim is the owner of bank account number xxxx9247 maintained at American National Bank.  *Id.* at ¶ 10.  Mexican tax authorities suggested that the Petitioner had deposited $400,000 in Bull Denim's account xxxx9247 and that this banking transaction was relevant to their investigation.  *Id.* at ¶¶ 9 and 11.

Based upon the information provided by the SAT, Mr. O'Donnell "determined that [the SAT's Request] is a proper request within the guidelines of the Convention" and "further determined that it is appropriate for the United States of America to honor this Request and thereby lend assistance and support to Mexico, as the Convention contemplates."  *Id.* at ¶ 3.

Mr. Villarreal disputes that he owns or controls account number xxxx9247 at American National Bank, and insists that the single account he holds that American National Bank is unrelated to the account identified in the IRS summons.  *See* Declaration of Salomón Juan Marcos Villarreal, at ¶¶ 2 and 3, attached as Exhibit 3 to Petitioner's Supplement to Petition to Quash Summons.  Petitioner also denies that he either owns, controls or has any interest in Rambas Marketing Co., LLC, or Bull Denim.  *See* Opposition to the United States'

---

[2]This is not the first lawsuit involving Bull Denim, S.A. de C.V., Salomon Juan Marcos Villarreal, and a petition to quash enforcement of a third-party summons for documents.  *See Bull D, S.A. de C.V. v. United States*, 487 F. Supp. 2d 772 (W.D. Tex. 2007) (holding that the third-party summons should be enforced).

Summary Judgment, at 5 n.1.

On March 29, 2011, IRS Supervisory Revenue Service Representative Raul Pertierra

issued a summons to American National Bank requesting production of "books, records, papers

and other data relating to the tax liability or the collection of the tax liability or for the purpose of

inquiring into any offense connected with" the "Mexican tax liability of Salomon Juan Marcos

Villarreal." *See* Declaration of Raul Pertierra, at ¶¶ 1 and 3, attached as Exhibit 3 (doc. #13-3)

to United States' Motion for Summary Judgment. *See also* Exhibit 1 attached to Addendum to

Petition Attaching Complete Exhibit (doc. #10).  More specifically, American National Bank was

directed to furnish copies of various documents (including copies of canceled checks, deposit

slips, wire transfers and other deposit or withdrawal documents) "pertaining to account no.

[xxxx9247] and any other accounts associated with Salomon Juan Marcos Villarreal (including

any private banking account associated with this account for the period January 1, 2009 through

December 31, 2009."

In conjunction with issuing the summons to American National Bank, Mr. Pertierra

directed his secretary to send the Petitioner notice of the summons. That notice was sent to the

Petitioner's last known address by registered mail on March 29, 2011, pursuant to 26 U.S.C. §

7609(a).[3]  *Id.* at ¶ 5.

After receiving the SAT's March 4, 2011 request for information, Mr. Pertierra sent a

letter to Rambas Marketing Co., LLC seeking information regarding the Petitioner and Bull

---

[3]The IRS is required to provide notice of the third-party summons to "any person . . . identified" in the summons about whom information is requested and a "copy of the summons which has been served and . . . an explanation of the right . . . to bring a proceeding to quash the summons." *See* 26 U.S.C. § 7609.  *Cf. Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995).

Denim, S.A. de C.V.  *See* Exhibit 4B attached to Petitioner's Opposition to the United States'

Motion for Summary Judgment (doc. #16).  *See also* Supplemental Declaration of Raul Pertierra,

at ¶ 6, attached to Reply to Petitioner's Opposition Memorandum (doc. #20).  Mr. Pertierra

received a response to this letter on or about May 10, 2011, along with a CD containing images

of documents.  *See* Exhibit 4C attached to Petitioner's Opposition to the United States' Motion

for Summary Judgment (doc. #16).  *See also* Supplemental Declaration of Raul Pertierra, at ¶ 7,

attached to Reply to Petitioner's Opposition Memorandum (doc. #20).  Mr. Pertierra recalls that

the CD supplied by Rambas Marketing Co., LLC included documents evidencing a line of credit

extended to the Petitioner, IRS tax reporting forms evidencing gambling winnings of the

Petitioner, and hotel statements accounting for the Petitioner's dining and lodging activities

(which reflected that some or all of those charges had been offset or "comped").  *Id.* at ¶ 9.  After

confirming that the produced documents were responsive to the letter request sent to Rambas

Marketing Co., LLC, Mr. Pertierra forwarded the CD to the SAT, but did not keep a copy for the

IRS' files.  *Id.* at ¶ 8.

 After June 21, 2011, Mr. Pertierra informed Mexican authorities that Mr. Villarreal was

asserting that the Servicio de Administracion Tributaria was not permitted to take action against

the Petitioner "without the permission of the Mexican Court."  *See* Declaration of Raul Pertierra,

at ¶ 11, attached as Exhibit 3 (doc. #13-3) to United States' Motion for Summary Judgment.

(Pertierra Decl. ¶ 11).  *See also* Supplement to Petition to Quash Summons (doc. #11), at 4.  Mr.

Pertierra specifically asked whether the SAT's investigation of Petitioner for the tax period

January 1, 2009 through December 31, 2009 had been suspended, in whole or in part, until the

appropriate Mexican court or other Mexican forum authorized the SAT to proceed with its audit.

*See* Declaration of Raul Pertierra, at ¶ 12, attached as Exhibit 3 (doc. #13-3) to United States'

Motion for Summary Judgment.

In a July 13, 2011 response to Mr. Pertierra's inquiries, the SAT indicated that its

examination, with respect to Mr. Villarreal's tax liabilities had not been barred or suspended by

any decree of a Mexican court, contrary to Mr. Villarreal's assertion.  *Id.* at ¶ 11.  In particular,

the SAT confirmed in writing that the filing in a Mexican court of the Petitioner's challenge to

the seizure of his Mexican bank account by Mexican tax authorities does not affect or require the

suspension of the SAT's Request of March 4, 2011.  *Id.* at ¶ 13.  The SAT indicated that it was

aware of a judicial proceeding with the number 25/2011 brought by or on behalf of Petitioner

relating to the garnishment of bank accounts.  *Id.* at ¶ 14.  Mr. Pertierra was told that while the

court in judicial proceeding number 25/2011 had suspended the garnishments at issue on a

temporary basis, pending a final determination by the court, Article 46-A of the Mexican

Federation's Tax Code provides that the type of challenge brought by the Petitioner would only

suspend the final resolution of the SAT investigation and the finalization of the SAT's review,

not the gathering of evidence as part of the audit/examination.  *Id.* at ¶ 14.[4]

Mr. Pertierra also was advised of a second Mexican judicial proceeding with the number

1639/11-05-02-05 pertaining to fines against Mr. Villarreal, but was told that the SAT was not

---

[4]Mr. Villarreal disputes this assertion, claiming that he has been told by his Mexican
counsel the SAT will not be able to institute any formal action against him or institute a formal
audit of Petitioner's tax liability, and may not take further action against any of his bank accounts
in Mexico without the permission of the Mexican Court.  *See* Declaration of Salomon Juan
Marcos Villarreal (doc. #11-1), at ¶ 9, attached to Petitioner's Supplement to Petition to Quash
Summons.  This court notes that Petitioner has not provided a declaration from his Mexican
counsel to substantiate this assertion.

aware of any order/resolution/decree in that proceeding (or any other proceeding) that would require the suspension of the SAT's investigation of the Petitioner for the 2009 tax year. *Id.* at ¶ 16). The SAT informed Mr. Pertierra that the Petitioner had not provided Mexican tax authorities with the information requested pursuant to the March 4, 2011 Request, but that Mr. Villarreal had been properly notified by the SAT of a formal audit of his tax liability for the tax year ending 2009. *Id.* at ¶¶ 17 and 18.[5]

## ANALYSIS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)(2). *See also Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir. 1991); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991). To meet the burden of persuasion required to support summary judgment under Rule 56, the movant must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[5]Mr. Villarreal insists that the SAT did not provide him with the required notice of its seizure of Petitioner's bank account or notice of a formal audit of his tax liability. *See* Declaration of Salomon Juan Marcos Villarreal (doc. #11-1), at ¶ 7, attached to Petitioner's Supplement to Petition to Quash Summons.

While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim. *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).   Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *See* Fed. R. Civ. P. 56(e). *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996).   The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52.   Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998).   The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact. *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997).

Under the terms of the 1989 Tax Information Exchange Agreement between the United States and Mexico, the signatory countries may "obtain from each other information that 'may be necessary or appropriate to carry out and enforce the[ir] tax laws." *See Barquero v. United*

*States*, 18 F.3d 1311, 1313 n.1 (5th Cir. 1994) (upholding the constitutionality and validity of the

TIEA between the United States and Mexico).  The Internal Revenue Service is the "competent

authority" of the United States charged with carrying out all exchanges of information authorized

by the TIEA.  *Id.* at 1313 n.2.

"To obtain enforcement of an administrative summons issued pursuant to 26 U.S.C.

§ 7602(2), the IRS need only demonstrate 'good faith' in issuing the summons."  *Lidas, Inc. v.*

*United States*, 238 F.3d 1076, 1082 (9th Cir. 1989).  A *prima facie* showing of good faith can be

established by showing that the related investigation is being undertaken for a legitimate purpose,

> "that the inquiry may be relevant to the purpose, that the information sought is not
> already within the [IRS Commissioner's] possession, and that the administrative
> steps required by the [United States] Code have been followed - in particular that
> the 'Secretary or his delegate,' after investigation has determined the further
> examination to be necessary and has notified the taxpayer in writing to that
> effect."

*United States v. Stuart*, 489 U.S. 353, 359 (1989) (quoting *United States v. Powell*, 379 U.S. 48,

57-58 (1964)).  *Cf. United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440, 1443

(10th Cir. 1985) (suggesting that the IRS' burden under *Powell* "is a slight one" and "[t]he

requisite showing is generally made by affidavit of the agent who issued the summons and who is

seeking enforcement").  These same requirements must be met when the IRS issues an

administrative summons at the request of a foreign government pursuant to a Tax Information

Exchange Agreement.  *Lidas, Inc. v. United States*, 238 F.3d at 1082.  However, the United

States is not required to establish the good faith of the requesting party, but simply that the IRS'

own actions were consistent with *Powell* and applicable statutes.  *Cf. United States v. Hiley,*

*PNH*, 2007 WL 2904056, at *2 (S.D. Cal. 2007) ("So long as the IRS itself acts in good faith

[under *Powell*] . . . and complies with applicable statutes, it is entitled to enforcement of its summons.").

The Declarations provided by Messrs. O'Donnell and Pertierra indicate that the SAT's request described an investigation of Mr. Villarreal's Mexican tax liabilities and provided sufficient reason to believe the American National Bank summons might produce information relevant to the determination of those tax liabilities.  For purposes of satisfying the second *Powell* factor (*i.e.*, that the requested information may be relevant to the underlying investigation), the government need not establish the relevance of each requested document, but rather must simply show that the desired information "'might throw light upon' the tax liability under investigation."  *Madge v. United States*, 1995 WL 313653, at *4 and 5 (D. Minn. 1995) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984)).  The Declarations also attest that as of March 29, 2011, the summoned information was not in the possession of the IRS or the Mexican tax authorities, and that a copy of the summons was sent to Mr. Villarreal by registered mail on March 29, 2011.  The O'Donnell and Pertierra Declarations are sufficient to satisfy the government's minimal burden under *Powell.*  *Cf. Putman v. United States*, 2009 WL 2447944, at *1 (D. Md. 2009) ("[T]he United States can satisfy [its burden under *Powell*] by producing an affidavit or declaration of the agent issuing the summons").  *See also Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001); *Gonzales v. United States*, 2011 WL 4688721, at *2 (N.D. Ill. 2011).

Once the IRS makes this threshold showing, it is entitled to an enforcement order and the burden shifts to the taxpayer to disprove one of the *Powell* factors or to establish that the IRS abused the administrative process by issuing the summons in bad faith.  *United States v.*

*Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999)  "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."  *United States v. Powell*, 379 U.S. at 58.  *See also United States v. Balanced Financial Management, Inc.*, 769 F.2d at 1444 (noting that the taxpayer's burden of proof is a "heavy one" and that the taxpayer "must do more than just produce evidence that would call into question the Government's *prima facie* case").

In this case, Petitioner argues that the presumption of good faith is "overcome by actual evidence."  First, Mr. Villarreal notes that the information sought by Mexican tax authorities concerned a Mexican company and that the SAT was barred from obtaining this information in view of legal proceedings pending in a "Mexican court of appropriate jurisdiction."  Based on what "the IRS knew or should have known with any reasonable investigation," Petitioner suggests that "when the facts are revealed, the bad faith undermining the summons is apparent, including the fact that the IRS knew that key elements of what the Mexican tax authority was saying were false."  *See* Opposition to the United States' Motion for Summary Judgment, at 2. As support for this argument, Mr. Villarreal points to documents received by the IRS from Wynn Las Vegas on May 10, 2011, which included the Rambas Articles of Organization and the October 17, 2002 amendment to the Rambas Articles of Organization which state that Wynn Resorts is the sole member and manager of Rambas.  Petitioner also contends that a "simple internet search for information regarding Rambas" would have informed the IRS that Rambas "is not 'associated' with Petitioner but instead is a subsidiary of Wynn Resorts Limited."

Petitioner's arguments, however, are not sufficient to sustain his heavy burden.  Here, the

administrative summons to American National Bank was issued on March 29, 2011.  While Mr.

Pertierra acknowledges receiving additional information from Wynn Las Vegas, LLC on May 10,

2011 and from the SAT on July 13, 2011, the government's compliance with the *Powell* factors

is measured as of the date the third-party summons was issued.  *Madge v. United States*, 1995

WL 313653, at *2 (D. Minn. 1995).  *See also United States v. Heck*, 25 F.3d 1059, at *2 (10th

Cir. 1004) ("The validity of [an IRS] summons is tested as of the date of issuance.") (quoting

*United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974)).  Moreover, the contested nature

of the judicial proceedings in Mexico or the ultimate disposition of those proceedings does not

rebut the legitimacy of the IRS' compliance with the SAT request or establish bad faith on the

part of the IRS.  *Cf. Mazurek v. United States*, 271 F.3d at 231 ("As long as the IRS acts in good

faith, it need not also attest to - much lest prove - the good faith of the requesting nation.").  *See*

*also Panton v. United States*, 780 F. Supp. 797, 803 (S.D. Fla. 1991) (noting that "a proceeding

regarding the validity of a summons is simply not the proper forum in which to raise issues

pertaining to whether tax liability exists in the first place").

     In lieu of quashing the summons served on American National Bank, Mr. Villarreal

contends that he has presented sufficient evidence of the IRS' lack of good faith to warrant an

evidentiary hearing.  More specifically, Petitioner points to

> (i) his successful due process challenge to the SAT actions against him in Mexico,
> (ii) the IRS knowingly relying [on] false statements by SAT claiming that
> Petitioner is "associated with" or "linked to" Rambas and (iii) the IRS artfully
> crafting the summons to hide the fact that SAT was seeking information it could
> not get under Mexican law as a result of Petitioner's success in the Mexican court
> of appropriate jurisdiction.

*See* Opposition to the United States' Motion for Summary Judgment, at 10.  These are the same

arguments Mr. Villarreal has raised in response to the government's *prima facie* case under *Powell*.

However, "[i]f at this stage the taxpayer cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *United States v. Balanced Financial Management, Inc.*, 769 F.2d at 1444 (suggesting that an "evidentiary hearing 'would be a waste of judicial time and resources'" where the taxpayer had failed to refute the *Powell* factors or present a factually supported affirmative defense). *See also United States v. Judicial Watch, Inc.*, 371 F.3d 824, 830 (D.C. Cir. 2004) (the district court's decision to deny discovery and an evidentiary hearing is reviewed for abuse of discretion). To merit an evidentiary hearing, Mr. Villarreal must do more than offer "[l]egal conclusions[,] mere memoranda of law . . . or allegations." *United States v. Balanced Financial Management, Inc.*, 769 F.2d at 1444. The Petitioner is required to present some facts "from which [the] court might *infer* a *possibility* of some wrongful conduct by the Government." *United States v. Samuels, Kramer and Company*, 712 F.2d 1342, 1348 (9th Cir. 1983) (quoting *United States v. Kis*, 658 F.2d 526, 540 (7th Cir. 1981)). *See also Fortney v. United States*, 59 F.3d at 121 ("A taxpayer is not entitled to an evidentiary hearing unless he or she presents some 'minimal amount of evidence' to support a contention of a lack of good faith."). Based on this court's review of the entire file, I conclude that Petitioner has not made a sufficient showing to suggest the possibility of bad faith on the part of the IRS. Accordingly, I will deny the request for an evidentiary hearing.

14

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Respondent United States'

Motion for Summary Judgment with Respect to Petition to Quash a Summons (doc. #13) be

granted.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve

and file written objections to the Magistrate Judge's proposed findings and recommendations

with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general

objection that does not put the District Court on notice of the basis for the objection will not

preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.

1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite

the lack of an objection does not preclude application of the "firm waiver rule");  *International*

*Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 28th day of November, 2011.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge